**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

***In re***
**KEITH E. PEREAU,**

**Appellant,**

**vs.** **Case No.: 3:07-cv-423-J16**

**DOREEN ABBOTT, TRUSTEE,**

**Appellee.**
**____________________________________/**

**ORDER**

Debtor, Mr. Keith Pereau appeals the bankruptcy court's order dated March 13, 2007 (the "Bankruptcy Order"), sustaining the Trustee's Objection to Debtor's claim that a $35,000.00 settlement check (the "Check") (Trustee's Ex. 7) received by Debtor and his non-filing spouse, Ms. Lydia Pereau ("Ms. Pereau") was the property of the bankruptcy estate.[1]

**I. Statement of Facts**

Debtor filed for Chapter Seven bankruptcy protection on October 14, 2005. Ms. Pereau did not file separately or join Debtor's petition. A § 341 Meeting of Creditors was held on November 28, 2005 (the "Creditors' Meeting"). During that meeting Debtor disclosed that he had been injured in an accident and that he had retained the services of an attorney, Mr. Borden Hallowes ("Mr. Hallowes") to work on his personal injury case against

[1] *In re* Pereau, 2007 WL 907545 (Bankr. M.D. Fla.) (March 13, 2007).

Nimnicht Chevrolet or General Motors in state court (the "State Court Case").[2] At the Creditors' Meeting, Debtor claimed he was unaware of "where we were at with it [sic]." (Dkt. 5, citing to T2 at 39).[3]

As evidenced by a December 19, 2005, letter from Nimnicht Chevrolet (the "Nimnicht Letter") a settlement was reached in the State Court Case that resulted in an award of $35,000.00 to the Pereaus. On December 20, 2005, the day after receipt of the Nimnicht Letter, Mr. Hallowes filed an amended complaint in the State Court Case that added Ms. Pereau's loss of consortium claim. (T2 at 16, Pereau Ex.1).[4] The Check was dated January 16, 2006. On January 30, 2006, Debtor amended his Bankruptcy Schedule B (Personal Property) listing the Check as remittance to "debtor and wife." (Pereau Ex. 12). Contemporaneously, Debtor amended his Bankruptcy Schedule C (Personal Property Exempt) claiming the Check as exempt due to its tenants by the entirety status. On February 7, 2006, Debtor and Ms. Pereau executed a general release of all claims against Nimnicht Chevrolet in exchange for the Check. The Check was made out to: "Borden Hallowes, Attorney, and Keith and Lydia Pereau." *In re* Pereau, 2007 WL at *1. On February 17, 2006, the Trustee filed an Objection to the Amended Exemptions. (Trustee's Ex. 10). The Trustee

---

[2] Case No.:16-2005-CA-002178, in the Circuit Court, Fourth Judicial Circuit, in and for Duval County. Gary Snead, injured in the same accident as Debtor, was also a party to the State Court Case. Mr. Snead received $25,000.00 from Nimnicht Chevrolet for his injuries.

[3] T2 refers to the transcript from the hearing held on November 29, 2006, which is part of the "Objection Hearing" held by the bankruptcy court and defined below.

[4] Hallowes filed the amended complaint on December 20, 2005. Neither party directly addresses why the original complaint was amended after settlement on December 19, 2005.

argued that a tenancy by the entirety was not present because Ms. Pereau's loss of consortium claim was "separate" and "apart" from Debtors' personal injury claim. The parties took no further action on this issue until June 2006.

On June 6, 2006, Pereau filed a Motion to Require the Trustee to Abandon Property (the "Motion") asking that the Check be declared exempt from inclusion in the bankruptcy estate because it was personal property owned by the Pereaus as tenants by the entireties. On October 25, 2006 and November 29, 2006, hearings (collectively, the "Objection Hearing") were held to determine the status of the Check. The Objection Hearing concluded with the bankruptcy court sustaining the Trustee's objection to the Check's exemption. The bankruptcy court agreed with the Trustee that the Check represented proceeds for two distinct causes of action - Debtor's personal injury claim and Ms. Pereau's loss of consortium claim. Based on this determination, the bankruptcy court concluded that the requisite "unity of interest" necessary for the Pereaus to possess the Check as tenants by the entireties was not present.

The Bankruptcy Order reads:

> As the settlement check was not prorated, Debtor and his non-filing spouse shall divide the $35,000.00 between themselves. As the Debtor's share of the settlement check is property of the bankruptcy estate, the Debtor shall select $1,000.00 worth of personal property and turn the remainder over to the Trustee within ten days of entry of an order sustaining the Trustee's Objections.

(Dkt. 5 at p. 9, citing to Bankr. Dkt. 46).

## II. Standard of Appellate Review

Because the district court sits in an appellate capacity when reviewing the determination of a bankruptcy court, the district court applies the same standards as do appellate courts when reviewing other cases. See Deramus v. Bank of Prattville, 180 B.R. 665, 667 (M.D. Ala. 1995). A bankruptcy court's conclusions of law are therefore reviewed de novo, requiring the district court to independently examine the law and to draw its own conclusions after applying the law to the facts, without regard for the decision of the bankruptcy court. See, e.g., Nordberg v. Arab Banking Corp., 904 F.2d 588, 593 (11th Cir. 1990); Reliance Ins. Co. v. Enstar Group, Inc., 192 B.R. 579, 580, n.3 (M.D. Ala. 1996). However, a bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. See Nordberg, 904 F.2d at 593.

## III. Discussion

The Bankruptcy Code exempts from its reach any real estate or personal property owned by the debtor and his spouse as tenants by the entirety. See 11 U.S.C. § 522(b)(2)(B). In Florida to create a tenancy by the entirety in real or personal property, there needs to be a unity of possession, interest, title, time and marriage. The issue before the Court is whether the Check is exempt from the bankruptcy estate because the Pereaus held it as tenants by the entirety.[5] The only dispute is whether the characteristic of the "unity of interest" was met.

Cases commenced under the Bankruptcy Code create an estate that is comprised of

[5] As the bankruptcy court stated in *In re* Pereau, "[t]he sole issue before the Court is whether Debtor's personal injury proceeds are exempt as tenants by the entireties." *In re* Pereau, 2007 WL at *1, n.1. Joining the bankruptcy court, this Court will not make any other determinations about the myriad of procedural issues raised by the parties.

all property in which the debtor has a legal or equitable interest as of the date the petition is filed. See 11 U.S.C. § 541(a) (1997). However, an individual is permitted to exempt property from the estate by claiming exemptions authorized by 11 U.S.C. § 522 (1997). Furthermore, § 522 allows a state to opt out of the federal exemptions and limit its residents to those exemptions provided under the state law. See 11 U.S.C. § 522 (b) (1997). The State of Florida has exercised this option. See id.; Fla. Stat. Ann. §§222.20 (West 1989). Therefore, a debtor who is a Florida resident may only claim exemptions that are listed under Article X, § 4 of the Florida Constitution and Florida Statutes ch. 222. F.S.A. Const. Art X, § 4 (2008 West).

Under Florida law, property held by a husband and wife as tenants by the entirety belongs to neither individual spouse, but to a separate entity referred to as the "unity" or "the marriage." See *In re* Stanley, 122 B.R. 599, 604 (Bankr. M.D. Fla. 1990). Therefore, with limited exceptions, entireties property does not become property of the estate when only one spouse has filed a bankruptcy petition. See *In re* Congilio, 16 B.R. 1015, 1021 (M.D. Fla. 1990).

Florida state courts and Federal bankruptcy courts recognize that entireties estates can exist in both real and personal property. *In re* Kossow, 325 B.R. 478, 483 (Bankr. S.D. Fla. 2005) (citing to Grant v. Peeples (*In re* Peeples), 105 B.R. 90, 94 (Bankr. M.D. Fla.1989). In Kossow, the bankruptcy court, citing to Beal Bank SSB v. Almand and Assoc., 780 So.2d 45 (Fla. 2001), recognized that "a presumption arises that personal property is held as a tenancy by the entireties as long as the personalty was acquired by husband and wife in

accordance with the unities . . . . As stated in Beal Bank, this presumption operates to shift the burden to the creditor to prove by preponderance of the evidence that a tenancy by the entireties was not created." In re Kossow, 325 B.R. at p. 485.

Prior to the Florida Supreme Court's holding in Beal Bank, this Court held that if personal property is involved, a debtor must prove the intent existed to create an entireties estate in the personal property. *In re* Howe, 241 B.R. 242, 246 (Bankr. M.D. Fla. 1999). Since Beal Bank the "prevailing line of reasoning is towards recognizing a presumption of tenancy by the entireties in personal as well as real property. *In re* Pereau, 2007 WL at *2 (internal citations omitted). This presumption applies to personal property "where all the unities of a tenancy by the entireties are present." Id.

Presumably, if the unities are not present the presumption is inapplicable. Thus, the pre-Beal Bank burden of proof would apply and a debtor would bear the burden of proving the intent to create an entireties estate in the personalty. The burden of proof is not met solely by a debtor or a non-filing spouse's testimony at the hearing on the objection to the claimed exemption. See id. Rather, a debtor must provide a quantum of documentary proof establishing that an entireties estate was intended to be created when the personalty was acquired. *In re* Allen, 203 B.R. 786, 791 (Bankr. M.D. Fla. 1996). See also Stanley, 122 B.R. at 604 ("[I]n matters involving personalty, in order to create a tenancy by the entirety, 'not only must the form of the estate be consistent with entirety requirements, but the intention of the parties [to create the estate] must be proven.'").

Debtor argues that all of the unities necessary for this Court to determine that the

Check was held by the Pereaus as tenants by the entirety are present here, including the characteristic of "unity of interest." Debtor supports his "unity of interest" argument with evidence from multiple sources. First, he cites to Mr. Hallowes' testimony at the Objection Hearing that settlements, which include a spouse's lack of consortium claim, are never apportioned as to damages. (Dkt. 5 at p. 4, citing to T2 at 9-13). Mr. Hallowes further testified that insurance companies do not routinely apportion damages. Second, Debtor claims that the intent to create a tenancy by the entirety was established by the settlement documentation from the State Court Case executed by the Pereaus - the general release, signed by both Debtor and Ms. Pereau; the settlement letter from Nimnicht Chevrolet dated December 19, 2005 (the "Nimnicht Letter"), announcing the settlement, etc. Third, Debtor claims that the Check itself is evidence of a tenancy by the entirety, because "settlement proceeds" as evidenced by the Check in the form of a negotiable instrument are exempt. (Dkt. 5 at p. 13). Fourth, citing to Florida law, Debtor claims that a tenancy by the entirety is created even if the amount of spousal contributions to the estate varied. Coulton v. Coulton, 330 So. 2d 533 (Fla. 2d Dist. Ct. App. 1976) (tenancy by the entirety established even though spousal contributions differed as to amount). Finally, Debtor claims that within the context of a Florida statute, § 766.207(b) limiting non-economic damages to a maximum of $25,000.00 per incident, the nature of the wife's loss of consortium claim is not a separate claim arising out of an incident. In support of this last claim, Debtor cites to St. Mary's Hospital v. Phillipe, 699 So.2d 1017 (Fla. 4th Dist. Ct. App. 1997), in which the court stated:

> In this type of situation, the spouse, who has a cause of action for a loss

> of consortium has a claim that is derivative of the injured spouse's claim for personal injury. The loss of consortium claim is derivative because it is founded on the relationship between a husband and a wife. The spouse with the loss of consortium claim has an interest in the litigation only in privity, thus, if the injured spouse's claim is defeated, the derivative claim of the other spouse for loss of consortium also fails. Thus, we find that because the spouse with the loss of consortium in privity, both spouses would be required to either accept arbitration or reject arbitration. To do so otherwise would allow inconsistent outcomes.

Id. at 1024.

In St. Mary's Hospital, the Fourth District Court of Appeal also determined that the wife's loss of consortium claim was limited by the statutory "per incident" and she could not assert a claim for non-economic damages to modify the per incident statutory rule of limitation mandated by Fla. Stat. § 766.207(b).

Citing to Beal Bank, the Trustee claims that to meet the characteristic of "unity of interest" as required for a tenancy by the entirety, the interests must be "identical" and Debtor's claim for injury is not the same as a claim for loss of consortium. As the parties' briefs acknowledge, a loss of consortium claim is derivative and thus, dependant upon a viable personal injury claim. The Trustee argues that "derivative" does not mean that Ms. Pereau's loss of consortium claim is not a separate cause of action that belongs solely to her. The Trustee further argues that dependant claims are not identical claims for the purposes of tenants by the entireties. The Trustee argues that the real issue here is not the Check, as Debtor claims, but rather it is the underlying cause of action. The Trustee states that Debtor's attempt to claim that "the property at issue is a negotiable instrument, as opposed

to the settlement proceeds of a pre-petition cause of action, is a red herring and should be dismissed." (Dkt. 6 at p. 13).

Debtor replies that a "non-injured spouse's loss of consortium claim is dependant upon the claim of the injured spouse . . . . In other words, the non-filing spouse shares a "unity of interest" in the outcome of the spouse's personal injury claim." (Dkt. 7 at p. 1). Debtor adds that "[t]he loss of consortium claimant certainly has a unity of interest in the outcome of the spouse's personal injury claim because if the spouse's personal injury claim fails then, the loss of consortium claim also fails." (Dkt. 7 at p. 2).

Debtor questions Trustee's claim that Beal Bank stands for the proposition that the "unity of interests had to be equal." Debtor claims that in Beal Bank the Florida Supreme Court stated that in order to meet the characteristic of "unity of interest," the "interests in the account must be identical." Beal Bank, 780 So.2d at p. 52. Based on this interpretation of Beal Bank, Debtor concludes that the "variance of claims between the injured spouse and the non-injured spouse is not the criteria to establish unity of interest. Rather, it is the unity of interest of both spouses in the ultimate success of the injured spouse's claim." (Dkt. 7, pp. 2-3).

The answer to this question depends on whether the Court agrees with the bankruptcy court's findings that because Ms. Pereau's loss of consortium claim is separate from Debtor's personal injury claim the characteristic of "unity of interest" was not met. The answer to this question depends, in part, on whether the Pereaus are entitled to the presumption that they owned the Check as tenants by the entireties. Because the Trustee questions the presence of

the characteristic of "unity of interest," the Court proceeds as if the presumption is inapplicable.[6] Thus, the question is - was Debtor able to produce enough documentary evidence to support his contention that he and Ms. Pereau owned the Check as tenants by the entirety?

The Court begins its analysis with the procedures of the bankruptcy court. The parties' briefs are contentious and contain discussion about adherence, or lack thereof, to the policies and procedures of the bankruptcy court. While these arguments may appear specious at first, they are not. Bankruptcy court procedures require that any personal injury claims to which the Debtor is a party are the property of the bankruptcy estate and that only the Trustee is authorized to settle such cases or execute any releases. On December 25, 2005, the Trustee sent a letter to Mr. Hallowes informing him of this. (Trustee's Ex. 5). Accompanying the letter was a declaration that contained some very specific terms of engagement that Mr. Hallowes was to follow. These terms included advising the Trustee of settlement offers, forwarding the gross settlement funds to the Trustee immediately and not depositing those funds into the attorney's firm's account and forwarding any releases to the Trustee for approval prior to execution. Mr. Hallowes was directed to sign the declaration and return it to the Trustee. Mr. Hallowes testified that he was "unaware" of this letter and he only returned the declaration to the Trustee in September 2006, although it is dated January 4, 2006 - well before he received the Check made out to Mr. Hallowes, Debtor and Ms. Pereau on January 16, 2006. Had Mr. Hallowes followed the procedures set forth in the

---

[6] In the Bankruptcy Order, the presumption was found to be applicable.

declaration, which by his signature he agreed to abide by, the filing of this case would not have been necessary.

Review of the record reveals that Debtor has not provided sufficient evidence to support his contention that the Check was held by the Pereaus as tenants by the entirety. The Check, payable to Mr. Hallowes, Debtor and Ms. Pereau, which Debtor claims is evidence, (Pereau Ex. 1) is not the "clear" evidence required. The check is made out to three parties which is not clear evidence of a tenancy by the entirety. It is only evidence that a lawsuit was settled and the proceeds were to be deposited in Mr. Hallowes account. The joint release executed by the Pereaus following settlement of the State Court Case (Pereau Ex. 2) and the Nimnicht Letter announcing settlement proceeds payable to Debtor and Ms. Pereau (Pereau Ex. 4) are also not necessarily clear evidence of the Pereaus' intent to create a tenancy by the entirety in the Check as neither references a tenancy by the entirety. (Trustee's Ex. 7).

The Trustee notes that it appears that the Pereaus and Mr. Hallowes purposefully thwarted bankruptcy law and the bankruptcy court's policies and procedures. Throughout her brief, the Trustee reminds the Court that Mr. Hallowes had no authority to settle the State Court Case or deposit the Check into his trust account. Bankruptcy law makes clear that settlement authority and custody of any settlement proceeds rests with the Trustee. How the Check ended up in Mr. Hallowes' firm's account and whether the bankruptcy court's policies and procedures were "violated" are not issues properly before the Court.[7] However, the

---

[7] The Trustee sought to have the bankruptcy court void the settlement on the grounds that only a trustee has the authority to settle and release a debtor's pre-petition cause of action. The bankruptcy court denied the request because the issue was not specifically before it. <u>See</u> <u>*In*</u>

Trustee's arguments do call into question the level of support that the Check, the joint release and the Nimnicht Letter actually offer Debtor.

Here, Debtor's primary evidence offered to support his tenancy by the entirety argument, even if not rejected above, could also be considered tainted. The Check, the joint release and the Nimnicht Letter are "evidence" that would not be in existence had the bankruptcy court's procedures been followed. While Mr. Hallowes testified that he was unaware of Debtor's bankruptcy, the bankruptcy court had the benefit of weighing this testimony when it sustained the Trustee's objection. It is important to courts that a "tenancy was not a hurried, after-the-fact creation used for purposes of insulating property from the claims of creditors . . . ." See *In re* Mathews, 360 B.R. 732 (Bankr. M.D. Fla. 2007) (citing to Stanley, 122 B.R. at 604). This Court does not have the benefit of hearing from live witnesses, however, from the record alone it appears that the Trustee's arguments about the formation of the tenancy by the entirety have merit.

Florida law does not conclusively support Debtor's position either. The Pereaus' individual causes of action differ. They are so interdependent as to rise and fall together. However, proceeds awarded for a loss of consortium claim compensate a spouse, Ms. Pereau in this case, for her own distinct loss. Modern juries are capable of filling out verdict forms that differentiate between a plaintiff's underlying injury and a spouse's loss of consortium claims. Thus, Mr. Hallowes contention that insurance companies do not routinely apportion settlements as to damage is not conclusive. Apportionment could have been done here.

---

*re* Pereau, 2007 WL at * 1, n.1.

Based on the above, Debtor failed to provide clear documentary evidence that he and Ms. Pereau owned the Check as tenants by the entirety. Thus, the Court concludes that the bankruptcy court was correct when it sustained the Trustee's objection.

## IV. Conclusion

For the reasons cited above, the Bankruptcy Order is **AFFIRMED**. The Clerk of the Court is directed to **CLOSE** this case.

**DONE and ORDERED** from Chambers in Jacksonville, Florida on this 15th day of May 2008.

JOHN H. MOORE II
United States District Judge

Copies to: Counsel of Record